IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**DAVID SHEDWICK ,**                     **CASE NO. 2:13-cv-0970**

                 **Petitioner,**          **JUDGE MICHAEL H. WATSON**

**v.**                                    **Magistrate Judge Kemp**

**WARDEN, LEBANON CORRECTIONAL
INSTITUTION,**

                 **Respondent.**

## REPORT AND RECOMMENDATION

Petitioner, a state prisoner, has filed a petition for a writ of habeas corpus

pursuant to 28 U.S.C. §2254.  This matter is before the Court on the petition, the return

of writ, the traverse, and the exhibits of the parties.  For the reasons that follow, the

Magistrate Judge **RECOMMENDS** that petitioner's claims be **DISMISSED**.

## I.  PROCEDURAL HISTORY

Petitioner was indicted by a Franklin County, Ohio grand jury and charged with

two counts of aggravated burglary, four counts of aggravated robbery, eight counts of

robbery, four counts of kidnaping, and two counts of having a weapon while under a

disability, for a total of twenty felony counts.  Many of them carried specifications as

well.  *Return of Writ*, Exhibit 1.  He pleaded not guilty and proceeded to trial.  Prior to

trial, sixteen of the counts were dismissed on the State's motion, and a jury found

Petitioner guilty of the other four.  In an entry filed on August 18, 2011, he was

sentenced to a total of sixteen years in prison.  *Return*, Exhibit 3.

Represented by new counsel, Petitioner timely appealed his convictions and sentence to the Tenth District Court of Appeals. He presented the following assignments of error on appeal (the last two of which were raised in supplemental brief which Petitioner filed *pro se*):

> I. THE TRIAL COURT ERRED WHEN IT ENTERED JUDGMENT AGAINST THE APPELLANT WHEN THE EVIDENCE WAS INSUFFICIENT TO SUSTAIN A CONVICTION[.]
>
> II. THE TRIAL COURT ERRED IN OVERRULING APPELLANT'S MOTION FOR ACQUITTAL PURSUANT TO CRIMINAL RULE 29[.]
>
> III. THE TRIAL COURT ERRED WHEN IT ENTERED JUDGMENT AGAINST THE APPELLANT WHEN THE CONVICTION WAS NOT SUPPORTED BY THE MANIFEST WEIGHT OF THE EVIDENCE[.]
>
> [IV.] [THE] JURY VERDICT IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE [BECAUSE] THE STATE DID NOT PROVE VENUE, [AND] THE JURY NEVER FOUND [APPELLANT] GUILTY OF VENUE[.]
>
> [V.] [THE] VERDICT FORMS AND RESULTING ENTRY WERE INSUFFICIENT UNDER R.C. 2945.75 TO SUPPORT APPELLANT'S CONVICTION[.]

*See State v. Shedwick*, 2012 WL 1852083, *1 (Franklin Co. App. May 22, 2012). A sixth assignment of error, raising a claim of ineffective assistance of trial counsel, was stricken by the court. In its decision, the court of appeals overruled all five assignments of error and affirmed the judgment of the trial court. *Id.*

Proceeding *pro se*, Petitioner appealed that decision to the Ohio Supreme Court. He asserted four propositions of law in his memorandum in support of jurisdiction.

*Return,* Exhibit 15.  The first three are substantially similar to the first three assignments of error presented to the court of appeals; the fourth raises an issue of ineffective assistance of appellate counsel.  The Ohio Supreme Court declined to hear the appeal. *State v. Shedwick*, 133 Ohio St.3d 1412 (Oct. 10, 2012).

While that matter was pending, on August 7, 2012, Petitioner filed a motion for reopening with the Tenth District Court of Appeals, raising multiple claims of ineffective assistance of appellate counsel and also a claim about the fairness of the appellate proceedings.  *Return*, Exhibit 18.  His application was denied on December 6, 2012.  *Return*, Exhibit 20.  It does not appear that he appealed that decision to the Ohio Supreme Court.

Petitioner filed this federal habeas corpus action on September 30, 2013, having placed it in the prison mail system on September 19, 2013.  Doc. 1.  He raised the following claims, reproduced here exactly as he stated them:

**GROUND ONE**: Insufficient Evidence.

**Supporting Facts**: All the essential elements of the charges against Petitioner were not proven beyond a reasonable doubt. No evidence was even adduced that he entered the crime scene residences at all. No physical evidence was found in the Petitioner's possession and the only factor linking him to the crimes was the testimony of two Prostitutes, who were both facing over 100 years each. The Court should have granted the Rule 29 motion.  All of which violates the 5th and 14th Amendments.

**GROUND TWO**: Ineffective assistance of Appellate Counsel.

**Supporting Facts**: Appellate Counsel failed to Federalize the claims he raised, and omitted substantial argument in support of the claims, as well as stronger issues raised by Petitioner pro-se, due to Counsel's

ineffectiveness, in violation of the 6th Amendment, and, as such, violates the 5th and 14th Amendments as well.

**GROUND THREE**: Ineffective assistance of Trial Counsel.

**Supporting Facts**: Trial counsel failed to proffer substantial, known exculpatory evidence to prove the Petitioner's innocence, including the alleged victims' description of the actual robber as being between 140 and 165 pounds, when the Petitioner at the time of arrest and the incident weighed 373 pounds. Trial Counsel's failure to render effective assistance violated the 6th Amendment, and subsequently the 5th and 14th Amendments.

**GROUND FOUR**: Conviction is Void, due to lack of Territorial Jurisdiction.

**Supporting Facts**: The Trial Court lacked Territorial Jurisdiction to hear, try or convict this Petitioner, as venue was not proven. It is not even where the alleged offenses occured where the conviction was handed down, in violation of the 5th and 14th Amendments of the U.S. Constitution.

*Petition, supra.* It is Respondent's position that grounds three and four have been procedurally defaulted, and that all four grounds lack merit.

## II. THE FACTS

The court of appeals for the Tenth Appellate District, in *State v. Shedwick, supra* at *1, summarized the facts of the case this way:

On December 27, 2009, Columbus police officers arrested Alyssa Weant ("Alyssa"), who was driving a maroon Ford Explorer that had been reported stolen following a home invasion that occurred the previous day. Following her arrest, Alyssa confessed to participating in a home invasion on December 26, 2009 ("the December 26th incident") together with her sister, Angela Weant ("Angela"), appellant, and appellant's brothers, Cory Shedwick ("Cory") and Timmy Shedwick ("Timmy"). Based on this information, Angela was arrested in Morrow County and interviewed by Columbus police officers. Angela confessed to being involved in the

December 26th incident and other home invasions, including one on December 5, 2009 ("the December 5th incident"). Angela confessed that Alyssa was involved in some of these home invasions and indicated that appellant, Cory, and Timmy also participated. Angela and Alyssa were each charged with multiple felony offenses relating to the home invasions. They each pled guilty to a single charge of aggravated burglary, and each received a recommended sentence of seven years' imprisonment. As a condition of the plea agreements, Angela and Alyssa were required to testify truthfully against any and all accomplices.

As a result of the information provided by Angela and Alyssa, appellant was arrested and charged with 20 felony counts. The case ultimately proceeded to trial on four charges: aggravated burglary with a firearm specification and aggravated robbery with a firearm specification related to the December 5th incident, and aggravated burglary with a firearm specification and aggravated robbery with a firearm specification related to the December 26th incident. The jury found appellant guilty of all charges and specifications, and the trial court sentenced appellant to 16 years' imprisonment.

In connection with Petitioner's challenge to the sufficiency of the evidence, the state court added (*State v. Shedwick, supra*, at *3-6),

We will consider the sufficiency of the evidence with respect to each of the incidents in turn, beginning with the December 5th incident. One of the victims, Rodolfo Vazquez–Mendoza ("Vazquez–Mendoza"), testified that, in the early morning of December 5, 2009, he was asleep in a bedroom of the apartment he shared with five other men. He awoke to someone pulling the bedcovers off his body. Vazquez–Mendoza testified that three African–American men and two white women had broken into the apartment. One of the intruders pointed a gun at Vazquez–Mendoza and placed him facedown on the floor. The women spoke Spanish, asking Vazquez–Mendoza and the others in the apartment where their money was located. Vazquez–Mendoza testified that the intruders went through his belongings and stole pesos from him and from the other man who slept in that bedroom. He further testified that his uncle, who also lived in the apartment, grabbed a bat or stick and started waiving (sic) it at the intruders. One of the intruders took the bat or stick away and started beating Vazquez–Mendoza's uncle, rendering him unconscious. After the intruders left, Vazquez–Mendoza called the police. Columbus Police

Officer Eric Westbrook ("Officer Westbrook") testified that, on December 5, 2009, he responded to a home invasion call at 5765 Milbank Road in Franklin County, Ohio. He stated that one or two of the victims may have been pistol-whipped and that one of them was bleeding. Officer Westbrook testified that cash and possibly a set of keys were taken from the apartment.

Angela testified that, on December 5, 2009, she, a woman named Tasha, appellant, and Cory broke into an apartment on Milbank Road. She stated that they discussed how they would conduct the robbery while sitting in appellant's car prior to the incident. Angela explained that she and Tasha knocked on the door of the apartment; when the residents opened the door, the women entered, and then appellant and Cory forced their way into the apartment. Angela testified that appellant had a silver handgun during the December 5th incident and identified the gun at trial. She further testified that one of the residents of the apartment came out of a bedroom swinging a stick or bat. She stated that appellant struck the man in the head with the handgun, injuring the man's head. Angela testified that she and the others took wallets, change, a bag, and a boom box from the December 5th incident. Alyssa testified that she was not involved in the December 5th incident.

***

With respect to the December 26th incident, one of the victims, Geronimo Encarnacion ("Encarnacion"), testified that, early in the morning of December 26, 2009, he awoke and heard someone trying to get into his room in the apartment he shared with four other men. An intruder wearing a ski mask shoved his way into Encarnacion's room. He saw other intruders wearing ski masks try to enter other bedrooms in the apartment. The intruder who entered his room pulled out a firearm and told Encarnacion to get on the ground. The man started going through Encarnacion's belongings; a woman then entered his bedroom and asked him, in Spanish, where his money was located. Encarnacion testified that he gave the intruders his wallet. While going through Encarnacion's possessions, the intruder continued to point the gun at him. Encarnacion testified that his uncle, who was in the same bedroom, did not understand the intruders' command to get on the ground; when he refused to get on the floor, the man with the gun struck Encarnacion's uncle in the head with the butt of the firearm. Encarnacion testified that this caused his uncle's head to bleed. The intruders left, taking two sets of car keys in addition to other items. After the intruders left, Encarnacion called the

police. The Columbus police officer who responded to that call, Matthew Ewing ("Officer Ewing"), testified that the intruders entered the apartment through a sliding glass door. The victims were made to lie facedown on the floor and were robbed of money, identification, cell phones, car keys, and other items. The victims reported that one of the intruders pointed a handgun at them. Officer Ewing also testified that one of the victims was injured.

Angela testified that on December 25, 2009, she, Alyssa, and two friends were in Columbus using drugs. When they ran out of drugs and money late in the evening of the 25th, Angela and the others tried to sell a stolen car, tried to break into cars to obtain electronics they could sell, and tried to find someone with whom Angela could prostitute herself. Angela then knocked on the back door of an apartment on Milbank Road and indicated that she wanted to prostitute herself to the residents who could be seen sleeping inside. The residents did not let Angela into the apartment. Angela then went to Alyssa and asked whether she was interested in robbing that apartment. After Alyssa agreed, Angela called appellant and told him she had a target for a robbery. Shortly thereafter, appellant arrived with his brothers Cory and Timmy. Angela and appellant discussed how they were going to conduct the robbery. Angela testified that appellant handed her a crowbar and a glove, and she used the crowbar to open the glass door of the apartment.

Angela testified that she, Alyssa, appellant, Cory, and Timmy then entered the apartment. Angela testified that appellant had a gun during the break-in. Angela and appellant went into one of the bedrooms and took money and other items. Angela testified that the money included dollars and pesos. Cory and Timmy took a television and other items from the living room. When Angela and appellant went to move to another bedroom of the apartment, one of the residents pushed Angela. Angela testified that appellant then punched the man and knocked him to the ground. Angela testified that, in addition to the cash and other items, she and Alyssa each took a set of car keys from the apartment. After leaving the apartment, they divided the money that was taken. Angela testified that appellant took the pesos as part of his share. Alyssa located the car that matched the set of keys she had taken and took the car, a maroon Ford Explorer. Angela testified that she gave appellant the other set of keys and later picked up the car, a dark blue SUV, from appellant. As noted above, Angela identified appellant's silver handgun at trial. Angela also identified a photograph of the pesos taken during the December 26th

incident.

Alyssa testified similarly regarding the December 26th incident. She
testified that she, Angela, appellant, Cory, and Timmy entered the back
door of the apartment after Angela opened the door with a crowbar.
Alyssa further testified that appellant had a gun, but she did not
remember what it looked like. She testified that she took a set of car keys
during the robbery and stole the maroon Ford Explorer that matched the
keys. This is the car she was driving when arrested on December 27, 2009.

Columbus Police Officer Shea McCracken ("Officer McCracken") testified
that, after Angela and Alyssa identified appellant, Cory, and Timmy, the
police began to try to locate the brothers. On December 28, 2009, Officer
McCracken and another officer waited near appellant's address. When
appellant drove up, the officers pulled appellant over for a traffic
violation. During the stop, Officer McCracken saw a silver firearm on the
front seat of appellant's car. Appellant was arrested for the traffic violation
and for a firearm violation. Officer McCracken testified that, when he
searched appellant, he found pesos in appellant's pockets.

## III. PROCEDURAL DEFAULT

### A. THE LAW OF PROCEDURAL DEFAULT

The term "procedural default" has come to describe the situation where a person

convicted of a crime in a state court fails (for whatever reason) to present a particular

claim to the highest court of the State so that the State has a fair chance to correct any

errors made in the course of the trial or the appeal before a federal court intervenes in

the state criminal process. Procedural default can be a fairly complicated doctrine,

involving a number of court-made rules and exceptions, but the basic premise is simple

and is reflected in the language Congress has used in 28 U.S.C. § 2254.

Under § 2254, a federal court may grant relief to a state prisoner only if that

person is being held in custody in violation of the Constitution or law of the United States-that is, that the prisoner's conviction or sentence was unlawful under federal law. In order for a federal court to decide any such claims on their merits, "the state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition." *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999). That is so because § 2254(b) states that an application for a writ of habeas corpus filed by someone in petitioner's position "shall not be granted" unless "the applicant has exhausted the remedies available in the courts of the State...."

One of the aspects of exhausting available state court remedies is that a habeas petitioner present the claims to the state courts in a way that gives those courts a fair opportunity to rule on the federal law claims being asserted. That means that if the claims are not presented to the state courts in the way in which state law requires, and the state courts therefore do not decide the claims on their merits, neither may a federal court do so. In the words used by the Supreme Court in *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977), "contentions of federal law which were not resolved on the merits in the state proceeding due to respondent's failure to raise them there as required by state procedure" also cannot be resolved on their merits in a federal habeas case-that is, they are "procedurally defaulted."

In the Sixth Circuit, a four-part analysis must be undertaken when the state argues that a federal habeas claim is waived by the petitioner's failure to observe a state procedural rule. *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir.1986). "First, the court must

determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule." *Id*. Second, the Court must determine whether the state courts actually enforced the state procedural sanction. *Id*. Third, it must be decided whether the state procedural forfeiture is an adequate and independent state ground upon which the state can rely to foreclose review of a federal constitutional claim. *Id*. Finally, if the Court has determined that a state procedural rule was not complied with, and that the rule was an adequate and independent state ground, then the petitioner must demonstrate that there was cause for him not to follow the procedural rule, and that he was actually prejudiced by the alleged constitutional error. *Id*. This "cause and prejudice" analysis applies to failures to raise or preserve issues for review at the appellate level. *Leroy v. Marshall*, 757 F.2d 94 (6th Cir.1985).

## B. APPLICATION TO THE FACTS

Petitioner's third and fourth grounds for relief as set forth in his petition are that his trial counsel was constitutionally ineffective, primarily for failing to introduce evidence that the robber was described by witnesses as weighing about 200 pounds less than Petitioner weighed at the time, and that no proof was offered at trial that either of the two home invasion robberies happened in Franklin County. Respondent acknowledges that Petitioner attempted to raise both claims at some stage of his state proceedings, but argues that he did not do so in the proper way, preventing the state courts from ruling on either claim.

The Court begins with the claim concerning ineffective assistance of trial counsel.

The first time Petitioner mentioned this claim was in a document he filed in the Tenth

District Court of Appeals on March 26, 2012, and which he called "Responses to

Appealle (sic) Contra Reply Brief of Supplemental Issues." *Return*, Exhibit 11.  He

included it along with other arguments, calling it an amended sixth assignment of error.

The State's response was to file a motion to strike (Exhibit 12), contending that it is not

proper for an appellant to raise a new issue in the reply brief.  The court of appeals

agreed and struck the sixth assignment of error, reasoning that

> Under App.R. 16(C), an appellant may file a brief "in reply to the brief of
> the appellee." "A reply brief affords an appellant an opportunity to
> respond to an appellee's brief, * * * and it is improper to use it to raise a
> new issue." *State v. Mitchell*, 10th Dist. No. 10AP–756, 2011–Ohio–3818, ¶
> 47. *See also State ex. rel. Bryant v. Indus. Comm.*, 10th Dist. No. 07AP–731,
> 2008–Ohio–3292, ¶ 5 ("The purpose of a reply brief is to afford the
> appellant, or in this case, relator, with an opportunity to 'reply' to the
> arguments in appellee's/respondent's brief, not to raise a new argument
> for the first time."). For this reason, generally, we will not address an
> argument raised for the first time in a reply brief. *State v. Townsend*, 10th
> Dist. No. 10AP–983, 2011–Ohio–5056, ¶ 15.

*State v. Shedwick*, 2012 WL 1852083, *2.  Petitioner did not assign this ruling as error

when he appealed to the Ohio Supreme Court, nor did he raise any issue about

ineffective assistance of trial counsel in that court - his ineffective assistance claim in his

memorandum in support of jurisdiction was directed to the performance of his

appellate counsel.  *See* Exhibit 15.

Petitioner actually committed two separate procedural defaults of this claim.

First, by not including it in his initial assignments of error on appeal and raising it only

in his reply memorandum, he violated an Ohio procedural rule concerning the proper scope of the reply memorandum. That rule has been consistently enforced not just in Franklin County, as the court of appeals' opinion in Petitioner's case illustrates, but elsewhere in Ohio, and for many years. *See, e.g., Sheppard v. Mack*, 68 Ohio App.2d 95, 97 n.1 (Cuyahoga Co. 1980)("New assignments of error (i. e., those contained in a 'further brief') may not be raised except with leave of court"); *see also State v. Bowens*, 1998 WL 438804, *1 (Clermont Co. App. Aug. 3, 1998)("We find that appellant's 'new' assignments of error are improperly raised by way of reply brief").

Turning to the second *Maupin* factor, the Tenth District Court actually enforced this rule by granting the State's motion to strike, and it did not consider the merits of Petitioner's ineffective assistance of trial counsel claim. This Court also concludes that the rule against raising new issues in a reply brief is an adequate and independent ground for the state court's ruling; federal courts have consistently found state rules of court which require an appellant to raise claims of error in the opening brief, and not the reply brief, to be enforceable and reasonably related to the State's interest in orderly proceedings on appeal. *See, e.g., Hickman v. Ryan*, 2009 WL 4730854 (D. Ariz., Dec. 1, 2009)(finding similar Arizona rule of court to be an adequate and independent state ground); *see also Weaver v. Carlin*, 2012 WL 827201 (D. Idaho Mar. 9, 2012)(same for Idaho court rule). This Court interprets its own rule concerning new issues raised in a reply brief in similar fashion, *see Bishop v. Oakstone Academy*, 477 F.Supp.2d 876, 889 (S.D. Ohio Mar. 5, 2007)("it is well established that a moving party may not raise new

issues for the first time in its reply brief"), and the Court of Appeals follows that rule as well: "As a general rule, this Court does not entertain issues raised for the first time in an appellant's reply brief." *United States v. Demjanjuk*, 367 F.3d 623, 637 (6th Cir. 2004).

Petitioner does not address this issue in his traverse, and has not argued that there was any acceptable reason why he did not follow the state court rule. Further, he has not addressed the second procedural default either, which stems from his failure to raise the issue before the Ohio Supreme Court. This Court also may not consider issues which were properly presented to a state court of appeals but not further appealed to the Ohio Supreme Court. *See, e.g., Lewis v. Randle*, 36 Fed.Appx. 817, 818 (6th Cir. Apr. 30, 2002)("Lewis appealed the denial of his motion for a new trial to the Ohio Court of Appeals but not to the Ohio Supreme Court. Accordingly, he is foreclosed from presenting his claim in federal court ..."). For these reasons, the Court agrees with Respondent that Petitioner's third ground for relief is procedurally barred.

Similar reasons apply to Petitioner's fourth ground for relief. He raised that issue for the first time on appeal. The state court of appeals, noting that "appellant did not make any objection in the Crim.R. 29 motion [filed at the close of the state's case] or at any other time during the trial regarding venue," held that "appellant waived the issue of venue." *State v. Shedwick, supra,* *8. The court did conduct a plain error analysis, finding that the police officer who responded to the reports of burglaries testified that he was employed by the City of Columbus and that nothing suggested the crimes occurred outside Franklin County. But conducting a plain error analysis does

13

not excuse a procedural default. *Paprocki v. Foltz*, 869 F.2d 281 (6th Cir. 1989). And, as with ground three, Petitioner did not include this issue in his memorandum in support of jurisdiction filed with the Ohio Supreme Court. Thus, both grounds three and four were procedurally defaulted.

Beyond the four-part *Maupin* analysis, this Court must consider whether this is "an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray v. Carrier*, 477 U.S. at 496; *see also Sawyer v. Whitley*, 505 U.S. 333, 339, 112 S.Ct. 2514, 120 L.Ed.2d 269 (1992). Petitioner has not argued that he meets this standard. The closest he comes is arguing that the evidence was not sufficient to sustain his conviction, but, as discussed below, that claim fails on its merits. Additionally, ""It is important to note in this regard that 'actual innocence' means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623 (1998). Therefore, this Court may not consider the merits of either Petitioner's third ground for relief, or his fourth.

### IV. SUFFICIENCY OF THE EVIDENCE

In his first ground for relief, Petitioner argues (as he did in the state courts) that there was not sufficient evidence to support his convictions. That is a difficult argument to succeed upon in a federal habeas corpus petition.

The provisions of the Antiterrorism and Effective Death Penalty Act, Pub.L. 104-132, 110 Stat. 1214 (AEDPA) govern the scope of this Court's review. *See Penry v. Johnson*, 532 U.S. 782, 791 (2001); *Wilson v. Parker*, 515 F.3d 682, 691 (6th Cir.2008).

14

AEDPA imposes a "highly deferential standard for evaluating state-court rulings," *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7 (1997), and "demands that state-court decisions be given the benefit of the doubt," *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (per curiam ). *Renico v. Lett*, 130 S.Ct. 1855, 1862 (2010)(footnote omitted) .

When the claims presented in a habeas corpus petition have been presented to and decided by the state courts, a federal habeas court may not grant relief unless the state court's decision was contrary to or an unreasonable application of clearly established federal law, or based on an unreasonable determination of the facts in light of the evidence that was presented.  28 U.S.C. §2254(d) provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding

In applying this statute, the Supreme Court has held that "[t]he focus . . . is on whether the state court's application of clearly established federal law is objectively unreasonable . . . an unreasonable application is different from an incorrect one." To obtain habeas corpus relief, a petitioner must show the state court's decision was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Bobby v. Dixon*, 132

15

S.Ct. 26, 27 (2011), *quoting Harrington v. Richter*, 562 U.S. ––––, ––––, 131 S.Ct. 770, 786–87 (2011). This bar is "difficult to meet" because "habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Harrington v. Richter*, 131 S.Ct. at 786 (*quoting Jackson v. Virginia*, 443 U.S. 307, 332, n. 5 (1979) (Stevens, J., concurring in judgment)). In short, "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Id.*, *quoting Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004).

These rules apply with special force to a claim that the evidence presented at a state court trial was not sufficient to sustain the jury's verdict. A challenge to the sufficiency of the evidence, when made in a habeas corpus petition subject to the AEDPA, must meet an exacting standard. As this Court explained in *Lynch v. Hudson*, 2011 WL 4537890, *81-82 (S.D. Ohio September 28, 2011):

> In *Jackson v. Virginia* [443 U.S. 307 (1979)], the United States Supreme Court held that as a matter of fundamental due process, a criminal conviction cannot stand unless each essential element is proven beyond a reasonable doubt. 443 U.S. at 316. The Supreme Court explained that when reviewing a challenge to the constitutional sufficiency of the evidence supporting a criminal conviction, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* at 319. The Supreme Court cautioned, with respect to the role of a reviewing court, that "[t]his familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Id.* Thus, after reviewing the evidence in a light most favorable to the prosecution and respecting the trier of fact's role in determining witnesses' credibility and weighing the evidence, a federal court must grant habeas corpus relief "if

it is found that upon the record evidence at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt." *Id*. at 324.

It is important to remember when reviewing a sufficiency of the evidence challenge that this Court "do[es] not reweigh the evidence, re-evaluate the credibility of the witnesses, or substitute [its] judgment for that of the jury." *Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir.2009). If the record contains credible, competent evidence enabling a rational jury to find each essential element beyond a reasonable doubt, then Petitioner's challenge to the sufficiency of the evidence fails. *Cf. Matthews v. Abramajtys*, 319 F.3d 780, 788–89 (6th Cir.2003) ("The mere existence of sufficient evidence to convict therefore defeats a petitioner's claim.").

*Further, as the Sixth Circuit has explained, "[i]n a habeas proceeding, however, we cannot simply conduct de novo review of the state court's application of [the *Jackson v. Virginia*] rule, but must review its sufficiency-of-the-evidence decision under the highly deferential standard of the AEDPA." *Saxton v. Sheets*, 547 F.3d 597, 602 (6th Cir.2008). In *Tucker v. Palmer,* 541 F.3d 652 (6th Cir.2008), the Sixth Circuit explained in more detail:

> Accordingly, the law commands deference at two levels in this case: First, deference should be given to the trier-of-fact's verdict, as contemplated by *Jackson;* second, deference should be given to the Michigan Court of Appeals' consideration of the trier-of-fact's verdict, as dictated by the AEDPA.

*Id*. at 656. *See also Parker v. Renico*, 506 F.3d 444, 448 (6th Cir.2007); *Nash v. Eberlin,* 258 F. App'x 761, 765 (6th Cir.2007). This Court recognizes, however, that "even after AEDPA, [the Court] must 'distinguish reasonable speculation from sufficient evidence' when reviewing a state court's application of *Jackson*." *Smith v. Romanowski*, No. 07–1578, 2009 WL 1884451, at *6 (6th Cir. Jul.1, 2009) (Moore, J., dissenting) (quoting *Brown v. Palmer*, 441 F.3d 367, 352 (6th Cir.2006)).

Petitioner's traverse addresses only this claim, and it presents the most complete explanation of why he thinks the evidence was insufficient, even though the state court of appeals thoroughly reviewed the evidence about both the December 5, 2009 and

December 26, 2009 incidents and concluded that, based on the testimony of Angela Weant, who was present during both home invasions, and her sister Alyssa Weant, who was also present during the December 26, 2009 incident, there was enough evidence for the jury to convict Petitioner of aggravated burglary, aggravated robbery, and firearms specifications.

The traverse begins with the December 5, 2009 aggravated burglary and aggravated robbery charges. Petitioner argues that "the State only put on one witness to testify" about this incident - Rodolfo Vazquez-Mendoza, one of the five Hispanic residents of the apartment where the crime took place. Mr. Mendoza testified that there were five intruders, three of whom - like Petitioner - were Black males, but he could not identify any of them because they wore masks. He was unable to identify Petitioner at trial. He concedes that both Angela and Alyssa Weant testified about that home invasion as well, but points out that their testimony was contradictory - Alyssa said she was present during the December 5, 2009 incident, but Angela said that the second female involved was not Alyssa but another woman - and that Angela said that Petitioner was not wearing a mask during the home invasion. Further, Mr. Mendoza described the weapon used during the crime as dark or black, whereas Angela said it was silver (and police recovered a silver handgun from Petitioner). He discounts Angela's in-court identification of him as one of the perpetrators because she had known him for several years and she would have been able to identify him even had he not been involved in the crime.

As to the December 26, 2009 incident, Petitioner again notes that the victim who testified, Geronimo Encarnacion, was unable to identify his assailants because they wore masks. The investigating officer testified that the victims identified each of three mail suspects as weighing between 140 to 150 pounds. Petitioner again concedes that both Angela and Alyssa Weant testified that he was involved in this incident, but both said he was not wearing a mask. Additionally (although this may not have been in evidence), Petitioner weighed substantially more than 150 pounds at the time. Finally, the gun used in that robbery was supposedly black, not the silver gun which Angela Weant identified. Given all of these conflicts in the evidence, Petitioner argues that no rational jury could have found him guilty beyond a reasonable doubt.

The Court has reviewed the transcript and is not persuaded that the testimony of the various witnesses is quite as contradictory as Petitioner makes out. But even if it were, that would not assist him. In deciding if the trial evidence is sufficient to support a conviction, "[a]ll conflicts in the testimony are resolved in favor of the government, and every reasonable inference is drawn in its favor." *United States v. Geisen*, 612 F.3d 471, 488 (6th Cir. 2010). A court reviewing a jury's verdict in a case where the evidence conflicts does "not weigh the evidence presented, consider the credibility of witnesses, or substitute [its] judgment for that of the jury." *United States v. M/G Transp. Servs., Inc.*, 173 F.3d 584, 5988-89 (6th Cir. 1999). Rather, the reviewing court must "resolve all issues of credibility in favor of the jury's verdict." *United States v. Maliszewski*, 161 F.3d 992, 1006 (6th Cir. 1998).

Petitioner does not, and cannot, argue that there was no eyewitness testimony linking him to these two home invasions. Apart from the circumstantial evidence of his being found with a substantial quantity of Mexican currency right after the second incident - something his explanation for could rightly have been disbelieved by the jury - both Weant sisters identified him as one of the participants. In order for the jury's verdict to be overturned, a reviewing court would have to find that both of their statements were so lacking in credibility that no reasonable juror could have believed what they said. As the Supreme Court noted in *Caminetti v. United States*, 242 U.S. 470, 495 (1917), "there is no absolute rule of law preventing convictions on the testimony of accomplices if juries believe them." Petitioner's argument about the Weant sisters "equates to an attack on the eyewitness's credibility—a determination that is exclusively the province of the trier of fact." *Moreland v. Bradshaw*, 699 F.3d 908, 920 (6th Cir. 2012). He had his chance to argue, at trial, that the jury should not believe what Angela and Alyssa said; having lost that argument, he cannot now successfully attack his convictions on grounds that the jury made the wrong choice.

This line of reasoning is exactly why the state court of appeals rejected Petitioner's argument. It cited Ohio decisions which state the same rule of law as the federal cases cited above. The court then reviewed the testimony in detail and concluded that, as to the first incident, Angela's testimony established all of the necessary elements of the crimes of aggravated burglary and aggravated robbery and that if the jury believed her, that was enough to convict Petitioner. *State v. Shedwick*,

2012 WL 1852083, *4.  As to the second incident, her testimony and Alyssa's testimony, taken together with the evidence that Petitioner was arrested within days of the crime and was found in possession of a weapon and Mexican currency, was, if believed by the jury, sufficient to support his conviction.  The state court neither misunderstood the relevant legal principles established by decisions of the United States Supreme Court nor applied them unreasonably to this case.  Petitioner's first ground for relief is therefore meritless.

## V.  INEFFECTIVE ASSISTANCE OF APPELLATE COUNSEL

Petitioner raised claims of ineffective assistance of appellate counsel in his application for reopening filed pursuant to Appellate Rule 26(B).  Although it does not appear that he appealed the denial of that application to the Ohio Supreme Court - something required both to exhaust any claims raised in that application and to prevent them from being procedurally defaulted, *see Banks v. Tibbals*, 2014 WL 132271, *14 n. 6 (N.D. Ohio Jan. 14, 2014) - Respondent does not raise either of these issues in the return.  Petitioner also included an ineffective assistance of appellate counsel claim in his appeal to the Ohio Supreme Court, which that court declined to hear.  Making this type of claim in a discretionary appeal to the Ohio Supreme Court, rather than in a 26(B) application, does not result in a decision on the merits.  *State v. Davis*, 119 Ohio St.3d 422 (2008).  However, because Respondent addresses the claim of ineffective assistance of counsel on its merits, and because it plainly lacks merit, this Court will do likewise.

It is important to focus on the exact ineffective assistance of appellate counsel

claim which Petitioner makes in his habeas corpus petition. The brief description of the claim, in the petition, has three parts: (1) failure to federalize the claims raised on appeal, (2) the omission of stronger arguments to support the claims which were raised, and (3) the failure to present the additional grounds for relief which Petitioner raised *pro se*. Petitioner does not expand on these claims in his traverse, so the Court will look to his state court filings to determine exactly what he means by each of these three assertions.

First, in his memorandum in support of jurisdiction (Exhibit 15), Petitioner argued that appellate counsel was ineffective for not citing to the Sixth and Fourteenth Amendments to the United States Constitution in support of the claims that the conviction was either based on insufficient evidence or against the manifest weight of the evidence. That would appear to be the same as his claim here that appellate counsel failed to "federalize" his claims. There is no state court decision on this claim.

Second, in his Rule 26(B) application to reopen, Petitioner argued that appellate counsel was ineffective (1) for failing to supply him with the trial transcript; (2) for not telling him that if he filed a *pro se* brief in support of his appeal he would not be able to bring a subsequent application for reopening; (3) for failing to raise an ineffective assistance of trial counsel claim based on trial counsel's failure to file a motion to suppress evidence; (4) for failing to raise various other instances of ineffective assistance of trial counsel; (5) for failing to raise a claim that Alyssa Weant committed perjury, failing to "hammer" on the discrepancies in the witnesses' testimony noted above, and

failing to point out that Angela Weant would have known about the handgun at issue not because she saw it at the home invasions, but because (as Petitioner testified) he bought it from her boyfriend. *Return*, Exhibit 18. The state court of appeals addressed these claims in its December 6, 2012 Memorandum Decision, finding the second claim moot because the court did not bar him from raising his claims in a 26(B) application even though he filed an earlier *pro se* brief, and finding no merit to the remaining claims. The court specifically found that Petitioner had not demonstrated "a reasonable probability that, but for counsel's failure to raise these issues, the result of the appeal would have been different." *Id*. at 5.

The Court begins with the argument Petitioner raised before the Ohio Supreme Court. Since there was no merits decision on that claim, this Court's review is *de novo*. *McKenzie v. Smith*, 326 F.3d 721, 727 (6th Cir. 2003).

The right to counsel guaranteed by the Sixth Amendment is the right to the effective assistance of counsel. *McMann v. Richardson*, 397 U.S. 759, 771 n. 14 (1970). The standard for demonstrating a claim of ineffective assistance of counsel is composed of two parts:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Strickland v. Washington*, 466 U.S. 668, 687 (1984). Scrutiny of defense counsel's

performance must be "highly deferential." *Id*. at 689.

The *Strickland* test applies to appellate counsel. *Burger v. Kemp*, 483 U.S. 776 (1987). Counsel must provide reasonable professional judgment in presenting the appeal. *Evitts v. Lucey*, 469 U.S. 387, 396–97 (1985). " '[W]innowing out weaker arguments on appeal and focusing on' those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy." *Smith v. Murray*, 477 U.S. 527, 536 (1986) (quoting *Jones v. Barnes*, 463 U.S. 745, 751–52 (1983)); *see also Mapes v. Coyle*, 171 F.3d 408, 427–28 (6th Cir.1999) (outlining factors to consider in assessing a claim of ineffective assistance of appellate counsel).

Petitioner's assertion that counsel was ineffective for failing to "federalize" his claims regarding the sufficiency of the evidence is simply incorrect. The claim that the convictions were against the manifest weight of the evidence is a state law claim, not a federal claim. "[A] manifest weight of the evidence claim is based on a state law concept that is both quantitatively and qualitatively different from a constitutional due process sufficiency of the evidence standard**."** *Wills v. Moore*, 2008 WL 2323786, *4 (S.D. Ohio June 3, 2008**)**; *see also Tibbs v. Florida*, 457 U.S. 31, 41-47 (1982). There would have been no point in citing to the United States Constitution on this claim. The claim of insufficiency of the evidence is, however, a federal law claim. As to that claim, Petitioner's appellate counsel cited the leading federal case on point, *Jackson v. Virginia, supra* (*see Return*, Exhibit 5, at 15-16); *Jackson*, in turn, relies on the Due Process clauses of the United States Constitution in its analysis. The state court of appeals followed

24

federal constitutional principles in deciding Petitioner's claim concerning the sufficiency of the evidence. Counsel neither deviated from the required standard of practice by not including additional citations to the Constitution, nor is there any likelihood that the outcome of the appeal would have been different had he done so.

As to remainder of Petitioner's ineffective assistance of appellate counsel claims, the deferential standard of review mandated by the AEDPA applies. The Court can grant Petitioner relief only if it determines that the Tenth District Court of Appeals' decision on the application for reopening was either contrary to, or an unreasonable application of, clearly established federal constitutional principles. *See Bell v. Cone*, 535 U.S. 685, 694 (2002).

The claims concerning the trial transcript and advice about the effect of filing a *pro se* brief appear either to be moot or subject to summary dismissal. The court of appeals did not refuse to hear Petitioner's application for reopening because he had filed a *pro se* brief in support of his direct appeal, and there is nothing in the record showing what additional arguments he would have made had he been given a transcript during the direct appeal process. The other claims fall into two general categories: failing to raise ineffective assistance of trial counsel claims based on motions which trial counsel did not file, and ineffective assistance of counsel claims based on trial counsel's performance during the trial itself.

As to the first of these matters, the state court of appeals held that the record did not establish any factual basis for filing a motion to suppress the evidence (a handgun)

seized from Petitioner's car.  Rather, the only testimony on this issue, from the arresting

officer, was that Petitioner was stopped for a traffic violation and that the gun was in

plain sight.  Even if Petitioner would have testified differently (and there is no evidence

in the state court record that he would have), counsel could have made a tactical

decision not to challenge the search, and that would not have been unreasonable.  An

ineffective assistance of counsel claim cannot be predicated on a disagreement with trial

tactics, especially where there is no evidence that choosing a different strategy stood

some reasonable chance of succeeding.  *See, e.g., Kimmelman v. Morrison*, 477 U.S. 365,

384 (1986)("the failure to file a suppression motion does not constitute *per se* ineffective

assistance of counsel"); *Carr-Poindexter v. Warden, Lebanon Correctional Inst.,* 2009 WL

3276094, *9 (S.D. Ohio Oct. 9, 2009)(denying relief on ground of ineffective assistance of

trial counsel where "there is no evidence to suggest that his counsel would have been

successful on such a motion"). The state court's determination followed these principles

and cannot be said to have been an unreasonable application of federal law.

Petitioner's other arguments concerning ineffective assistance of trial counsel fare

no better.  As the state court of appeals noted, after describing the claims as relating to

the failure to file a motion to suppress an alleged involuntary statement (which, in his

application for reopening, Petitioner did not identify), failing to file a motion for a new

trial based on alleged perjury, failing to make objections on the record, and failing to

investigate the case properly or to have a coherent defense strategy, "appellant ... offers

no evidence to support his claims." Exhibit 20, at 4.  This was not an unreasonable

conclusion to reach based on the record. Petitioner did not present any argument, let alone evidence, about why any of his statements to the police were involuntary or should have been suppressed, and he did not present any evidence of perjury beyond the trial transcript itself. Claims of a deficient investigation of the case would ordinarily be supported by evidence outside the record - that is, what additional facts an investigation would have produced - and that type of claim is more properly raised, in Ohio, by way of a petition for post-conviction relief, which Petitioner did not file, and which his appellate counsel had no obligation to file. The remainder of his claims appear simply to be disagreements with trial strategy, since trial counsel did make objections and called and cross-examined the witnesses in a competent way. This type of disagreement does not support a claim of ineffective assistance of counsel. *See, e.g.*, *Sowell v. Collins*, 557 F.Supp.2d 843, 886 (S.D. Ohio 2008) ("Strategic choices of counsel are entitled to deference, and the cross-examination of witnesses falls within the area of tactics or strategy that ought not be subjected to second-guessing merely because that particular strategy proved to be unsuccessful"), *aff'd* 663 F.3d 783 (6th Cir. 2011). Again, the state court did not either disregard clearly established federal law, or apply it unreasonably, when it reached the conclusion that appellate counsel neither acted improperly in not raising these claims on appeal nor prejudiced Petitioner's chances of succeeding on appeal by not doing so.

The final claim addressed by the state court of appeals is Petitioner's assertion that his appellate counsel should have presented additional arguments attacking the

credibility of the State's witnesses. But, as the Tenth District Court of Appeals pointed out, counsel did challenge the sufficiency of the evidence and argued that the convictions were against the manifest weight of the evidence, thus forcing the state court of appeals to examine the transcript and both evaluate and weigh the evidence. That same court found that additional arguments on that point would not have changed its approach to the case. This Court is no position to second-guess that conclusion. For all of these reasons, the Court finds that Petitioner's ineffective assistance of appellate counsel claim lacks merit.

## VI. RECOMMENDED DISPOSITION

For all the foregoing reasons, the Magistrate Judge **RECOMMENDS** that the petition for a writ of habeas corpus be **DENIED** and that this case be **DISMISSED**.

## VII. PROCEDURE ON OBJECTIONS

If any party objects to this Report and Recommendation, that party may, within fourteen days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this

matter to the magistrate judge with instructions.  28 U.S.C. §636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation de novo, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir.1981).

/s/ Terence P. Kemp
United States Magistrate Judge